# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM IRVING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:09CV00161 SNLJ |
| ) | |
| LARRY CRAWFORD, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Cynthia Reese's Motion for Summary Judgment, filed October 26, 2010 (#75). Plaintiff William Irving, a prisoner incarcerated at the Southeast Correctional Center ("SECC") in Charleston, Missouri, proceeding *pro se* and *in forma pauperis*, filed a response, and defendant Reese filed a reply. Plaintiff had requested and received leave to file a supplemental response memorandum. Plaintiff submitted an affidavit apparently in support of plaintiff's response on March 11, 2011, but that affidavit pertains only to allegations regarding other defendants (#145). This matter is now ripe for disposition.

Defendant Reese is one of several defendants named in plaintiff's lawsuit. Service as to one defendant, Debbie Vinson, is still pending; however, because claims and allegations against defendant Reese are distinct from those against other defendants, the Court will proceed with defendant Reese's motion.

**I.  Case Summary**

Defendant Reese is a licenced professional counselor and was employed at SECC as Institutional Chief of Mental Health Services at all times relevant to the complaint. Plaintiff alleges that Reese (1) unjustly denied his transfer to the Special Needs Unit, and (2) conducted

non-private evaluations at offenders' cell doors, thus allowing other offenders and guards to overheard confidential mental health information.

The undisputed material facts surrounding those claims are as follows.[1]

**A. Transfer to Special Needs Unit**

The Special Needs Unit is exclusively for offenders who are developmentally or intellectually disabled, and plaintiff admits he has no such disability. The parties agree that plaintiff was trying to allege that he wanted to be transferred to the Social Rehabilitation Unit, which requires that the offender has a significant mental illness which prohibits him from adequately functioning in the general population. Criteria for placement in the Social Rehabilitation Unit include the requirement that an offender have a level 4 mental health score ("MH4"), but the offender must also be a custody level of 4 ("C4") or less. Offenders with a custody level of 5 ("C5") may be admitted to the Social Rehabilitation Unit, but only after the offender receives an administrative override by the central transfer authority with the Department of Corrections.

Before January 7, 2010, plaintiff was classified as a level 3 mental health score and, thus, he was not eligible for transfer to the Social Rehabilitation Unit. In addition, plaintiff is a custody level 5 offender and, thus, any transfer to the Social Rehabilitation Unit would require approval by the Department of Corrections. The Social Rehabilitation Unit is a general population setting where offenders must interact with other offenders and Unit staff. As a result, offenders with a custody level 5 must be determined to not be a threat to themselves or others, as violent offenders pose a risk to other offenders who have severe mental illness concerns and who

---

[1] Plaintiff disputed some facts without providing citations to competent evidence in support of his contentions. Pursuant to Federal Rule of Civil Procedure 56(c)(2) and (e)(2), those facts will be considered undisputed for the purposes of defendant Reese's motion.

may not be able to defend themselves. Plaintiff's history of violence would make it difficult to obtain a "C5 override" to allow him residence in the Social Rehabilitation Unit

Plaintiff's history of violent behavior is well-documented. During his most recent incarceration at Southeast Correctional Center and while under the care of mental health professionals, plaintiff, on two different occasions, spit on staff. He has thrown urine on a staff member, and on two occasions he has thrown a clear substance from his cell. Plaintiff has threatened to kill a nurse. He has also threatened to stab a staff member the next time they removed him from his cell for recreation. In addition, plaintiff had six major assaults (spitting, headbutting staff, throwing urine), six minor assaults, and seven violations for threats prior to defendant Reese's initial contact with plaintiff. These incidents were all documented in his Department of Corrections Violation Summary.

In January 2010, plaintiff was raised to MH4 status, when he began to refuse to take his medications, and the lack of medications was causing him to decompensate and become more paranoid. Defendant Reese believes, in her professional opinion, that if plaintiff complies with his medication regimen, he will demonstrate a healthy level of functioning and should be able to successfully integrate back into general population. He was placed on involuntary medication in January 2010 and remained on that status for six months. Since that time, plaintiff has not had a single conduct violation. As such, it is defendant Reese's professional opinion that plaintiff does not require transfer to the Social Rehabilitation Unit for treatment of his mental illness, but instead he merely requires his medications to stabilize his mental health status. Defendant Reese's assessment of plaintiff was evaluated by two other mental health professionals, namely Lynn Calcote (Director of Mental Health), and Dr. Cathy Brock (Qualified Mental Health

Professional). Both agreed Plaintiff was not a candidate for transfer to the Social Rehabilitation Unit.

B.  **Non-private Mental Health Counseling**

Plaintiff also claims that defendant Reese conducted interviews at the offenders' cells, and that information from the non-private interview sessions were heard by other offenders and guards, who used the information to taunt and harass plaintiff. Defendant Reese states that she took all reasonable steps to attempt to keep conversations with plaintiff from being heard by other offenders or staff.

Plaintiff contends that there is a private room where offenders can receive mental health counseling, but that room is also used by medical and psychiatry and, thus, is not always available to the counselors. Due to his history of spitting at inmates and guards, plaintiff was classified as "Haz-mat" status, which meant that any transfer from his cell to the private counseling room had to be done by two or more guards. In addition, plaintiff was required to wear a specialized spit guard when removed from his cell. This often makes communication more difficult, and, presumably, it renders the offender difficult to hear and understand.

Prior to the filing of this lawsuit, plaintiff never advised defendant Reese that he did not want to be interviewed at his cell and instead wanted to only talk in the private room. Had plaintiff requested a meeting in the private room, defendant Reese could have and would have advised him that she would accommodate his request as soon as the private room was available and sufficient guards were present to transfer him to the private room. Indeed, plaintiff testified that he began receiving treatment in the private room in 2010. In addition, an offender can refuse mental health treatment so long as he is not at risk of harm to himself or someone else. Plaintiff signed two Informed Consent for Metal Health Treatment Services forms, which clearly state

both that "sometimes private things do get out," and that plaintiff could "refuse mental health treatment." Prior to the filing of this lawsuit, Reese was not aware that plaintiff believed other offenders or jail staff overheard cell interviews conducted by mental health counselors. Had plaintiff refused to engage in interviews at his cell, no action would have been taken against him by the counseling or prison staff. Offenders are not involuntarily given medications for refusing to have interviews conducted at their cells. Plaintiff, however, says without additional support that when he did refuse an interview at his cell with Dr. Qaisrani, he was forced to take injected medication. Defendant Reese states that plaintiff was involuntarily medicated only when he refused to take his medications, which she said had resulted in decompensation of plaintiff's mental condition and increased paranoia.

## II. Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the

5

nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

## III. Discussion

Defendant's motion seeks complete summary judgment on each of plaintiff's two claims against her.

### A. Transfer to Special Needs Unit or Social Rehabilitation Unit

Plaintiff appears to claim that defendant Reese's failure to transfer him to the Social Rehabilitation Unit violated his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from "deliberate indifference" to serious medical needs. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). A "serious medical need" is one "that has been diagnosed by a

6

physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d. 778, 784 (quoting *Camberos v. Branstad*, 73 F.3d. 174, 176 (8th Cir. 1995)); *see also Simmons v. Cook*, 154 F.3d. 805, 807-08 (8th Cir. 1997) (quoting *Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997)("A medical need is serious if it is obvious to the layperson or supported by medical evidence.")).

In order to satisfy the subjective component of an Eighth Amendment medical claim, a plaintiff inmate must show that the prison officials knew of, yet deliberately disregarded, an excessive risk to the inmate's health. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d. 647, 649 (8th Cir. 1997)). A prison official may be liable under the Eighth Amendment if she knows that an inmate faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." *Coleman*, 114 F.3d. at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). The plaintiff must establish a "mental state akin to criminal recklessness." *Vaughn v. Gray*, at 908 (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). "Neither differences of opinion nor medical malpractice state an actionable Constitutional violation." *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002).

Plaintiff suggests that his psychiatric condition required placement in a special prison unit — the Social Rehabilitation Unit — and that defendant's refusal to transfer plaintiff to that Unit constituted deliberate indifference to serious medical needs. Neither defendant nor plaintiff address whether plaintiff's mental condition — classified as either MH3 or MH4 during times relevant to this complaint — constitute a serious medical need. However, the Court need not address that issue because it is clear here that defendant Reese was not deliberately indifferent to plaintiff's mental condition. Plaintiff was being treated for his mental condition. He received counseling and medication (which he refused to take because he wanted to feel "alert"). His

7

complaint is that defendant Reese did not transfer him to the Social Rehabilitation Unit, which he believes would have effectively treated his declining mental state.

As discussed above, the Social Rehabilitation Unit is limited to offenders with mental health conditions of MH4 or higher who also have custody level status of C4 or lower. Inmates with C5 statuses must receive special clearance before being admitted to the Unit due to the danger they may pose to the other inmates in the Unit. Plaintiff's custody level status is C5, and he was classified as MH3 until he began refusing his medications in January 2010,[2] and then he was reclassified as MH4 while unmedicated. However, despite the MH4 status, plaintiff's extensive history of violence within the prison rendered him an unsuitable candidate for the Unit. Defendant Reese's professional opinion is that plaintiff, even when MH4, did not require transfer to the Unit because medication effectively treats his mental condition. Indeed, after plaintiff was put on involuntary medication status, his mental condition improved.

A difference in opinion between plaintiff and his health care providers does not rise to the level of a Section 1983 claim. *Jones*, 301 F.3d at 612. Here, it is clear that defendant Reese has not been deliberately indifferent to plaintiff's mental health needs (whether serious or not). Indeed, after plaintiff submitted an Informal Resolution Request regarding Reese's failure to transfer him, her decision was endorsed by two other healthcare professionals. Reese's decision was based on prison policy and the facts of plaintiff's mental health and history of violence, and the facts show her decision was not based on personal bias or malice.

B.  **Non-Private Mental Health Counseling**

Plaintiff next claims that Reese's conducting mental health interviews from his cell door violated his Eighth Amendment right to be free from cruel and unusual punishment and

---

[2]Notably, plaintiff filed his complaint on November 9, 2009, when he was still MH3.

demonstrates deliberate indifference to his serious medical condition. The Court has no information about the nature of these interviews such as their duration or content. As defendant Reese points out, plaintiff did not allege what specific confidential information was heard by other inmates or guards. The Court does not know what information *could* have been heard by others during these interviews. Although plaintiff submits four affidavits supporting that the non-private interviews occurred, the inmates who signed those affidavits do not state what (if any) information they heard. Defendant Reese states that she took all reasonable actions to prevent disclosure of private information. Reese also explains that plaintiff was required to wear a "spit guard" during these interviews, which made communication difficult. The Court may also infer that plaintiff was hard for Reese to understand while speaking behind a spit guard, therefore Reese may have expected it would be nearly impossible for other offenders to hear what he said.

In fact, plaintiff did not need to say anything at all if he were concerned about privacy. Plaintiff, according to his deposition and to documents submitted to the Court, was aware that he could refuse to participate in mental health treatment. Moreover, plaintiff began requesting and receiving private treatment in a private room sometime in 2010. Plaintiff had not requested such a private room prior to filing this lawsuit, and, even if he had made such a request but was denied due to availability problems with the room, plaintiff chose to participate in the interviews at his cell door.

Finally, plaintiff does not specify what harm the alleged dissemination of his private information (if it occurred) caused. He states that his mental state deteriorated as a result of being taunted and harassed, and that he was placed on suicide watch as a result. But his medical records make clear that his failure to take his medications may have caused delusions, and,

9

moreover, that plaintiff wanted to go on suicide watch so that he could speak to the captain concerning his "tampered mail."

No genuine issue of disputed fact exists for trial here because plaintiff has not shown that defendant Reese knew of but deliberately disregarded his serious medical needs. Reese did not know plaintiff's confidential information was being overheard (and plaintiff does not now specify what information *was* overheard). Plaintiff knew he could refuse treatment, yet he did not do so. And plaintiff's alleged injuries from the alleged dissemination of private information have not been supported.

Further, the Court is mindful that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of a § 1983 claim. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981). In addition, claims made under the Eighth Amendment require a compensable injury that is more than *de minimis*. *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir.1996); *Cummings v. Malone*, 995 F.2d 817, 822-23 (8th Cir.1993). Because plaintiff's suicide watch status is explained by plaintiff's desire to speak with the captain, and because plaintiff's delusions may be explained by his failure to take his medication, plaintiff fails to show that he was injured by any non-private interviews. To the extent any private information was heard by other offenders or staff, plaintiff's injury was *de minimis*.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Cynthia Reese's motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that **JUDGMENT** is hereby entered in favor of defendant Cynthia Reese.

Dated this   19th   day of May, 2011.

_____
UNITED STATES DISTRICT JUDGE