UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM IRVING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:09-CV-00161-SNLJ |
| | ) |
| LARRY CRAWFORD, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

This matter is before the Court on the Motion for Summary Judgment filed by defendants Gina Cook, Cheryl Dowdy, Charles Mitchell, Troy Steele, and Greg Walker on November 9, 2010 (#91). All the defendants[1] are or were employees of Southeast Correctional Center ("SECC") in Charleston, Missouri, where plaintiff William Irving was at one time incarcerated. Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a response (#95) and received leave to file a supplemental response memorandum (#145). Defendants filed a reply (#151). This matter is now ripe for disposition.

**I.     Case Summary**

Plaintiff, now an inmate at South Central Correctional Center in Licking, Missouri, was incarcerated at SECC at all times relevant to this 42 U.S.C. § 1983 action. He claims that (1) defendants Dowdy, Mitchell, and Walker facilitated an attack on plaintiff by his cellmate, Terance Lemons, by undertaking verbal harassment of plaintiff in front of other inmates; (2)

---

[1] Deborah Vinson, once employed at the SECC as the Director of Nursing for Correctional Medical Services, is also a defendant in this case. Defendant Vinson was personally served on April 27, 2011and filed her answer to the complaint on July 21, 2011.

defendants Dowdy, Steele, and Walker failed to protect him from Lemons, who attacked plaintiff with a shank in their shared cell; and (3) defendants Cook, Steele, and Walker failed to adequately investigate the attack.  Plaintiff alleges defendants violated the Eighth Amendment in the first and second claims and the Fifth and Fourteenth Amendments in the third. The following facts are not disputed, except where indicated.

      Plaintiff was involved in a civil trial in the United States District Court for the Western District of Missouri from August 4-6, 2008.[2] He states that SECC officials observed a portion of the testimony in that trial. Plaintiff alleges that upon his return to SECC on August 12, prison officials including defendants Dowdy (Functional Unit Manager), Mitchell (Correctional Officer) and Walker (Correctional Officer) began verbally harassing plaintiff in the presence of other inmates. Specifically, plaintiff claims that the majority of SECC employees used calculated harassments (i.e. rubbing noses; sticking F-you fingers up at plaintiff; calling plaintiff "rat" and "snitch," etc.), particularly defendants Dowdy and Mitchell. Plaintiff notes that "Captain Greg Walker done this repeated and intense whenever he seen plaintiff upon SECC grounds." Plaintiff wrote grievances regarding being labeled a "rat" or a "snitch" by correctional officers, but the grievances are dated March and April 2009, and the grievances name two correctional officers who have not been named as defendants in this suit.

      Plaintiff asserts that in October and November 2008, he informed defendants Dowdy, Steele, and Walker, via written communications commonly referred to as "kites," that his cellmate was threatening him. Little documentation of those "kites" exists.  Plaintiff wrote to defendant Steele on October 22, 2008 about a "vindictive unimpartial tribune," his inability to

---

[2] *Irving v. Dormire*, 2:04-CV-04309-SOW (W.D. Mo. Aug. 8, 2008).

obtain "I.R.R. forms," and his dissatisfaction with his cell and the property room.  On November 25, 2008, plaintiff again sent a kite to defendant Steele, this time explaining why plaintiff had overslept and received a conduct violation for missing a prison count; plaintiff mentioned that he and Lemons were "incompatible," and plaintiff noted that he was Christian rather than Muslim. Plaintiff has alleged that there other grievances and kites that told the defendants of "threats" made by his cellmate, but no other documents were apparently produced during discovery.[3]

According to plaintiff, the defendants neither responded to plaintiff's kites nor granted him protective custody. On November 26, 2008, plaintiff's cellmate assaulted him with a metal shank, leaving plaintiff with several injuries. However, plaintiff did not alert corrections officers of the assault until December 4, when plaintiff's cellmate went to the canteen. Plaintiff asserts that he suffered serious injuries, causing symptoms such as headaches, blurred vision, and back/leg/neck/shoulder pains to persist for more than four months after the incident. Defendants note that when plaintiff presented himself to the medical staff on December 4, his injuries consisted of shallow lacerations, a contusion, a puncture, and two abrasions. Defendants further maintain that plaintiff's injuries were properly treated with a tetanus/diphtheria shot, aspirin, and ibuprofen.

Finally, plaintiff claims that defendants Cook (a prison investigator), Steele, and Walker failed to properly investigate the attack, adhering to a "legendary code of silence" so as to cover

---

[3] On November 1, 2010, plaintiff filed a motion to compel defendants to produce, among other things, the kites allegedly written to defendants Dowdy and Walker and the mailroom logs of these in-house correspondences (#82). However, both plaintiff's motion and his reply memorandum (#93) failed to comply with Federal Rule of Civil Procedure 37(a)(1), which requires that the moving party certify that he has in good faith conferred or attempted to confer with the other party in order to obtain the materials he seeks without court action. For that reason, this Court denied plaintiff's motion without prejudice (#110). Plaintiff has not attempted to reassert the issue with certification of good faith pursuant to Rule 37(a)(1).

3

up staff misconduct. In his complaint, plaintiff seeks monetary, injunctive, and declarative relief.

## II.     Legal Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.

1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

### III.     Discussion

The defendants' motion seeks summary judgment on the (1) Eighth Amendment claim against defendants Dowdy, Mitchell, and Walker for attempting to facilitate an attack by undertaking verbal harassment, (2)Eighth Amendment claim against defendants Dowdy, Steele, and Walker for failure to protect, and (3) Fifth and Fourteenth Amendments claim against defendants Cook, Steele, and Walker for failure to adequately investigate the attack.

####     A.     Attempting to Facilitate a Physical Attack by Undertaking Verbal Harassment Claim Against Defendants Dowdy, Mitchell, and Walker

Verbal threats and name calling are usually not actionable under § 1983, but verbal harassment may constitute an actionable constitutional violation when it is so brutal or wantonly cruel as to shock the conscience, or if it exerts coercive pressure on the plaintiff causing the plaintiff to suffer the deprivation of a constitutional right. *Kurtz v. Shrewsbury*, 245 F.3d 753, 759 (8th Cir. 2001); *King v. Olmsted*, 117 F.3d 1065, 1067 (8th Cir. 1997). Plaintiff declares that the alleged verbal harassment undertaken by defendants Dowdy, Mitchell, and Walker violated their duty as prison officials "to protect prisoners from violence at the hands of other prisoners." *See Farmer*, 511 U.S. at 833.

Defendants Dowdy, Mitchell, and Walker all state that they did not label plaintiff a "rat" or a "snitch" at any time, nor did they taunt or tease plaintiff in any way.  Plaintiff has provided an affidavit signed by fellow inmate Greggory Hudson (#145).  Defendants argue that the

affidavit contains hearsay because it attests to information he gathered from other individuals. But the language in Hudson's affidavit is vague: "[defendants Dowdy, Mitchell, and Walker] told prisoners in Housing Unit #4 that William Irving was 'a rat and a snitch.'" For purposes of summary judgment, the Court assumes that Hudson was a member of that group of prisoners.

Furthermore, the Court disagrees with defendants that the verbal harassment alleged by plaintiff and detailed in the affidavit cannot be construed to rise to the level of a constitutional violation, as in the Eighth Circuit, a prisoner who is widely labeled as a "snitch" among the prison population is at a substantial risk of serious harm. *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995).

However, the Court must agree with defendants that plaintiff has not established causation, a necessary element in a § 1983 case. *See Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003). Although it is true that, "[a]s long as the causal link is not too tenuous, the question [of causation] should be left to the jury," *Ricketts v. City of Columbia*, 36 F.3d 775, 779-80 (8th Cir. 1994), there is ample reason to believe that plaintiff was attacked by his cellmate not because he had been labeled a rat/snitch, but rather because he and the cellmate had religious differences. Plaintiff's October and November 2009 communications with defendant Steele indicated that plaintiff and his cellmate were "incompatible," and plaintiff cited that he was Christian rather than Muslim — plaintiff did not mention that he was in danger due to his having been labeled a "rat" or a "snitch." Finally, Lemons did not cite defendants' verbal harassment as a contributing factor to the assault, and plaintiff does not dispute that Lemons's stated reason for the fight was simply that they got into an argument.

Critically, plaintiff's evidence does not support causation.  Plaintiff's grievances regarding being labeled as a "rat" or a "snitch" by correctional officers are dated March and April 2009 — that is, months *after* plaintiff was attacked in November 2008.  And those grievances are against two correctional officers who were not named in this suit.  Notably, the grievances do not mention or suggest that plaintiff had complained of being called a rat/snitch earlier. Moreover, affidavits submitted by plaintiff are inconsistent: two affidavits state that Lemons told the affiants he had stabbed plaintiff because defendants had labeled him a "rat" or a "snitch," and that this had occurred sometime in 2009.  (The third affidavit states that the affiant heard the defendants call plaintiff a rat or snitch from August to November 2008.)  Finally, although plaintiff insists that he filed grievances or otherwise communicated with defendants being labeled as a rat/snitch, plaintiff did not follow through on his attempts to obtain those documents.  Plaintiff moved to compel production of those documents and requested that the Court sanction the defendants for allegedly withholding them, but his motion was denied without prejudice for failure to comply with Rule 37(a)(1).  To the extent plaintiff believed the defendants were wrongfully withholding responsive documents, he never re-asserted that belief in a new motion to compel.  Thus, plaintiff's claims that the defendants are "covering up" their malfeasance by withholding the grievances are not supported by plaintiff's own actions —  plaintiff has shown himself capable of pursuing discovery in this matter, but in the many months that have passed since his initial Motion to Compel was denied without prejudice, he has failed to refile a motion to compel that complies with the Rules of Civil Procedure.

As a result, the Court does not find that a genuine issue of disputed fact exists with respect to the causation behind plaintiff's injuries.  The documentation (including plaintiff's own

kites from the relevant time period) supports that plaintiff and Lemons got into a fight over religious differences, as plaintiff's grievances regarding being labeled a rat/snitch by correctional officers post-dated the altercation by several months.  And two of three affidavits proffered by plaintiff do not support that plaintiff was attacked in 2008 over his being labeled a rat or a snitch. Plaintiff's explanation for why he was attacked is unsupported and far too tenuous to merit a trial under these circumstances.  See *Ricketts*, 36 F.3d at 779-80.

### B. Failure to Protect Claim Against Defendants Dowdy, Steele, and Walker

A Section 1983 claim alleging a prison official's failure to protect one inmate from injury at the hands of another requires proof of two elements, one objective and one subjective: (1) an objectively substantial risk of serious harm in the conditions of incarceration, and (2) deliberate indifference on the part of the defendant(s), measured subjectively and therefore requiring actual knowledge of the risk and a corresponding failure to take reasonable measures to lessen it. *Farmer v. Brennan*, 511 U.S. 825, 834-36, 847 (1994).

In the context of a failure-to-protect claim, the latter, subjective component requires "actual intent that the inmate be harmed, or knowledge that harm will result, or reckless disregard of a known excessive risk to inmate health and safety. *Krein v. Norris*, 309 F.3d 487, 492 (8th Cir. 2002) (quoting *Newman v. Holmes*, 122 F.3d 650, 652 (8th Cir. 1997)). Where a plaintiff alleges that prison officials recklessly disregarded a known risk, deliberate indifference "requires that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference." *Norman v. Schuetzle*, 585 F.3d 1097, 1104 (8th Cir. 2009) (internal alterations, quotations, and citation omitted). Negligence as to an inmate's safety does not amount to deliberate indifference. *Id*.

Prisons are dangerous places and "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (quoting *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). To support an Eighth Amendment claim, the risk of harm must go above and beyond that encountered when any group of inmates are left unsupervised for any amount of time. *See Burnley v. Evans*, 2007 WL 2874037, 249 F. App'x. 492, 494 (8th Cir. Oct. 4, 2007) (citing *Andrews v. Siegel*, 929 F.2d 1326, 1330-31 (8th Cir. 1991) ("some violence in prisons may be unavoidable due to the character of the prisoners")).

Plaintiff essentially contends that he sent kites to defendants Steele, Dowdy, and Walker from which they could have and did draw the inference that a substantial risk of serious harm existed.  Only two actual kites have been produced, however, and both were received by defendant Steele only.  Defendant Steele received inside correspondences from plaintiff on October 22, 2008 and November 25, 2008, but he contends that neither kite contained any information to permit any inference that a substantial risk of serious harm to plaintiff existed. Indeed, plaintiff's first kite to Steele involved allegations about a "vindictive impartial tribune" that was delaying giving plaintiff IRR forms and cell moves, and the kite also discussed plaintiff's concerns about some of his items in the property room.  Plaintiff mentioned Offender Lemons in his November 25, 2008, kite to defendant Steele, but plaintiff did not state that Lemons had threatened him or that he was under any threat of physical harm from Lemons. Rather, plaintiff simply mentioned that he was "incompatible" with Lemons, apparently because plaintiff is "not of Muslim belief" (like Lemons), and is rather "of the Christian faith," all in the

9

context of explaining why plaintiff had overslept and received a conduct violation for missing a prison count.

Plaintiff contends in his response to defendants' statement of facts that the November 25 kite's statements about his cellmate were sufficient to "put Steele on notice of problems with [plaintiff's] cellmate." However, even when reviewing the facts within these kites in the light most favorable to plaintiff and giving plaintiff the benefit of the doubt when considering inferences defendant Steele might be expected to draw, the test for deliberate indifference is not satisfied here. *See Buller*, 706 F.2d at 846. Even if these statements could give rise to an inference that a substantial risk of serious harm existed, defendant Steele must also draw this inference, and he did not do so here. *See Norman*, 535 F.3d at 1104. Plaintiff offers no evidence to show that defendant Steele's failure to draw this inference amounts to more than mere negligence. *See id.*; *see also Farmer*, 511 U.S. at 835 ("Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety") (internal quotations and citation omitted). The facts show that plaintiff's two kites to defendant Steele did not mention that plaintiff's cellmate was any threat to him, and thus they cannot support plaintiff's Eighth Amendment claim against defendant Steele.

As for defendants Dowdy and Walker, plaintiff asserts that he wrote "kites" to them, as well; however, defendants Dowdy and Walker both aver that neither received a kite or any other communication from plaintiff alerting them of threats to plaintiff's safety from his cellmate or any other staff member at any time prior to December 4, 2008. Plaintiff relies entirely on these alleged communications to defendants Dowdy and Walker as evidence that they had actual knowledge of the risk of serious harm to plaintiff. However, no such communications have been

produced. Plaintiff asserts in his response to defendant's statement of facts and in his response memorandum that he did send kites to Dowdy and Walker, and that the kites informed those defendants of "threats." But plaintiff does not offer any more information about when the kites were sent or what they said that would have put those defendants on notice. Plaintiff contends that his November 25 kite relaying that he and Lemons were "incompatible" was enough to put Steele "on notice" of a substantial risk to plaintiff's safety, but, as the Court has already observed, that kind of information does not permit the kind of inference that must be drawn. Even if the Court assumes that plaintiff sent kites to Dowdy and Walker conveying the same information about Offender Lemons as in the kites sent to Steele, those defendants likewise would not have been able to draw the inference that a substantial risk of serious harm to plaintiff's safety existed.

  Finally, as with plaintiff's allegations that he *did* submit grievances about being called a rat/snitch by correctional officers, plaintiff's allegations that he sent kites to defendants Steele, Dowdy, and Walker that were not produced by defendants cannot — by themselves — support his insistence that defendants knew a substantial risk of harm existed. Plaintiff must do more than show that there is some doubt as to the facts; rather, he must set forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Matsushita Elec. Industrial Co.*, 475 U.S. at 586; *Anderson*, 477 U.S. at 249; *see Celotex*, 477 U.S. at 324. Plaintiff does not provide any specifics about the timing, contents, or nature of his alleged kites. In the October 22 and November 25 kites to Steele, plaintiff states only that he and his cellmate are incompatible, and he cites their religious differences — those kites were sent in the time period plaintiff during which plaintiff said he sent other kites about threats of physical harm due

to being labeled a rat/snitch by correctional officers, yet plaintiff said nothing about his alleged dangerous situation to Steele on October 22 and November 25.  To the extent plaintiff truly believed different kites were in defendants' possession, it is telling that plaintiff did not make any effort to obtain those documents through a valid motion to compel.[4]  Plaintiff has failed to satisfy his burden to set forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for plaintiff, and summary judgment will be granted to defendants on this claim.  *See Anderson*, 477 U.S. at 249; *see Celotex*, 477 U.S. at 324.

### C. Failure to Properly Investigate Attack Claim Against Defendants Cook, Steele, and Walker

Plaintiff claims that defendants Cook, Steele, and Walker violated his due process rights when they failed to properly investigate the attack on plaintiff by Offender Lemons.  In order for a plaintiff to establish a violation of his Fourteenth Amendment rights due to an inadequate investigation, he must show that the failure to investigate was intentional or reckless, thereby shocking the conscience. *Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007). A negligent failure to investigate does not violate due process. *Id*.

At the outset, the Court notes that it is undisputed that defendant Cook, and not Steele or Walker, was assigned to investigate the attack.  Plaintiff at first alleged that Cook failed to adequately investigate plaintiff's allegations of assault because she did not issue plaintiff's cellmate a conduct violation or charge him with assault.  However, plaintiff does not refute Cook's sworn affidavit, in which she states that, after investigating the incident, she issued a

---

[4]As discussed above, plaintiff's first motion to compel and motion for sanctions seeking documents he believed defendants were withholding was denied without prejudice for failure to comply with Rule 37(a)(1). Plaintiff apparently abandoned his pursuit of those documents, as he never re-filed his motion to compel seeking those documents.

conduct violation to Lemons and referred him to the local prosecutor's office, which decided not to pursue assault charges. Essentially, then, plaintiff disagrees with the outcome of the investigation; although plaintiff may disagree with the prosecutor's decision not to prosecute, it is clear from the fact that defendant Cook issued Lemons a conduct violation and referred him to the prosecutor that Cook did not fail to investigate — let alone that there was an intentional or reckless failure to investigate. *See Brockinton*, 503 F.3d at 672.

As for defendant Steele, plaintiff does not dispute that he was not involved in the investigation at all. Plaintiff contends that defendant Walker — although not an official investigator — participated in the investigation because he took pictures and asked plaintiff what happened. However, as discussed above, it is clear that an investigation did take place under Cook's direction, and that the investigation did not violate plaintiff's due process rights. Therefore, summary judgment will be granted to defendants Cook, Steele, and Walker on plaintiff's due process claim.

### D. Official Capacity Claims

Finally, the Eleventh Amendment bars plaintiff's official capacity claims against defendants. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Quern v. Jordan*, 440 U.S. 332, 338-49 (1979) (42 U.S.C. § 1983 does not override the Eleventh Amendment immunity of states and their agencies). Accordingly, all of plaintiff's allegations against the defendants in their official capacities will be dismissed.

## IV. Conclusion

Summary judgment will be granted to defendants Dowdy, Mitchell, Cook, Steele, and Walker.

Dated this <u>13th</u> day of September, 2011.

_____<br>
UNITED STATES DISTRICT JUDGE